IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 25, 2001

## STATE OF TENNESSEE v. TIMOTHY CLARK NEWSON

**Appeal from the Criminal Court for Hamilton County**
**No. 225062     Douglas A. Meyer, Judge**

---

**No. E2001-00974-CCA-R3-CD**
**October 10, 2001**

---

The defendant, Timothy Clark Newson, appeals from his conviction for aggravated kidnapping, contesting the sufficiency of the evidence. We affirm the judgment of conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which JOE G. RILEY and ALAN E. GLENN, JJ., joined.

Brenda G. Siniard (on appeal) and Keith A. Black (at trial), Chattanooga, Tennessee, for the appellant, Timothy Clark Newson.

Paul G. Summers, Attorney General and Reporter; Mark A. Fulks, Assistant Attorney General; William H. Cox, III, District Attorney General; and Dean C. Ferraro, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant was convicted by a Hamilton County Criminal Court jury for aggravated kidnapping, a Class B felony, and assault, a Class A misdemeanor. The trial court sentenced him as a violent offender to twelve years in the Tennessee Department of Correction for the aggravated kidnapping conviction. He received a concurrent sentence of eleven months, twenty-nine days in the workhouse for the assault conviction. The defendant contends that the evidence is insufficient to support his conviction for aggravated kidnapping.

The victim, Tarashenda Harris, testified that in 1998, she and the defendant dated for three to four months. She said that she ended their relationship because he was physically and mentally abusive. She said that the defendant kept calling her and "coming around." She said that on September 9, 1998, she got home about 8:30 p.m. and that as she was opening the door to her apartment, the defendant approached her from behind. She said that the defendant grabbed her, pushed her into the apartment, and jerked a telephone line out of the wall. She said that about 9:30

p.m., her pager went off and that the defendant heard it and began hitting her. She said that he told her that he was tired of people calling and paging her. She said that she tried to go into her bedroom, where she had another telephone, but that the defendant pulled her hair and jerked her backward. She stated that the defendant put her in the bedroom, took the telephone in the bedroom off the hook, called her nasty names, and hit her twice on the left side of her face with his fist. She said that she screamed and tried to get out of the bedroom but that she could not overpower him. She said that the defendant made her lie down on the bed and that he sat on her legs. She said that he told her that if she kept trying to get away, he was going to kill her. She said that she asked the defendant if she could use the bathroom, but he told her to go in the bed. She said that the defendant sat on her legs all night and continued to abuse her physically and mentally.

The victim testified that the next morning, the defendant let her go to the bathroom. She said that the defendant went into the bathroom with her and stood over her. She said he got a clothes iron that had been in the hallway and hit her in the head with it. She said he kicked her on the left side of her face. She said that the defendant kept saying that he was going to kill her and that if he could not have her, no one could have her. She said that the defendant left her apartment about 9:30 a.m. to go to his child support services appointment. She said that before he left, the defendant threatened to tie her up, put her in the closet, and come back and kill her later. She said that after the defendant left, she called her mother, and her mother took her to the hospital. She said that she got to the hospital about 10:00 a.m. and that someone there called the police. She said that her head and left eye were swollen and that she had an ear injury. She said that she moved out of her apartment that day and moved in with her mother.

On cross-examination, the victim acknowledged that her hospital records stated that she was admitted at 1:49 p.m. on September 10, 1998. However, she said that she arrived at the hospital at 10:00 a.m. and that she was in the x-ray room. She said that after she finished with the x-rays, she talked to the police. She denied telling the police that the defendant used a key to get into her apartment. Defense counsel also asked the victim to explain an affidavit of complaint that she signed on September 11, 1998, which states, "On 9-10-98 around 1 a.m. Timothy C. Newson attacked Tarashenda Harris. Ms. Harris was standing outside her home talking to another individual when Mr. Newson walked up and grabbed her, forcing her into her apartment. . . . Mr. Newson left around 12:30 p.m. on 9-10-98." At this point, Ms. Harris's testimony became unclear. She testified that although she looked over the affidavit and signed it, someone else completed it for her. At first, she said that she did not recall saying that she was outside talking to someone when the defendant grabbed her. Later, she said that she might remember making that statement because people were walking down the street. She stated that she did not recall saying that the defendant left her apartment at 12:30 p.m. She said that she might have her times confused.

Noreen Jacks, the victim's mother testified as follows: Although the victim and the defendant had lived together, they were not living together when this incident occurred. At 9:30 p.m. on September 9, 1998, Ms. Jacks tried to call her daughter on the telephone. The line was busy, but Ms. Jacks was not concerned because the victim liked to talk on the telephone. Ms. Jacks tried to call her daughter a few more times before she went to bed, but the line was always busy. The next

morning, Ms. Jacks tried to call her daughter but could not get in touch with her. Alarmed, Ms. Jacks walked down the street to the victim's apartment. Seeing no one there, she thought that the victim was still asleep, and she returned home. At 9:30 a.m., the victim telephoned her mother, and Ms. Jacks went to the victim's apartment. The victim was black and blue, her mouth was bleeding, she had scratches on her arm, and her eyes were red. The victim had been crying and was a nervous wreck. Ms. Jacks took her daughter to the hospital instead of calling the police because the victim was "in terrible shape." Although the swelling in the victim's face went down that day, the next morning, the victim's left eye was swollen shut, and it remained that way for about a month. The victim moved in with her and experienced nightmares as a result of the incident.

Officer Karl Lewis from the Chattanooga Police Department testified that he was dispatched to the Memorial Hospital Emergency Room and that he interviewed the victim. He said that the victim complained that her ear hurt and that her ear was red and swollen. He said that the victim told him the defendant had stomped on her head with his foot and that her ear injury appeared to match that abuse. He said that the victim's left eye was swollen shut and blood was in her right eye. Officer Lewis said that he placed a "be on the lookout" (BOLO) call for the defendant. He said that a few minutes later, another officer arrested the defendant at the child support services building. On cross-examination, Officer Lewis said that he could not recall what time he arrived at the hospital but that he was there for an hour to an hour and a half. He said that he left the hospital and arrived at the child support services building about 2:15 p.m.

The defendant contends that the evidence is insufficient to support his conviction for aggravated kidnapping. He argues that the victim's pretrial statements were so inconsistent with her trial testimony that the jury should have discredited her testimony. In addition, he argues that the jury's verdicts were inconsistent. The state argues that the evidence was sufficient. We agree with the state.

Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence but presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Aggravated kidnapping is defined as false imprisonment committed "[w]ith the intent to inflict serious bodily injury on or to terrorize the victim or another[.]" Tenn. Code Ann. § 39-13-304(a)(3). False imprisonment is accomplished when one "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a).

We believe that the evidence is sufficient to support a conviction for aggravated kidnapping. The evidence shows that the defendant confined the victim to her bed all night by sitting on her legs and that he substantially interfered with the victim's liberty by confining her to the bed against her will. In addition, the defendant struck the victim repeatedly, refused to let her go to the bathroom, and threatened to kill her. Thus, the evidence sufficiently supports the jury's finding that the defendant acted with the intent to terrorize the victim. We recognize that the victim's pretrial statements conflict with her trial testimony. However, the defendant cross-examined the victim about the inconsistencies, and the jury chose to believe the victim's testimony. Therefore, viewed in the light most favorable to the state, the evidence is sufficient.

Relative to inconsistent verdicts, the defendant argues that because the jury found him not guilty on Count 2 of the aggravated kidnapping indictment, which requires that the victim suffer bodily injury, but found him guilty on Count 1 of the indictment for assault, which requires that the victim suffer bodily injury, the jury's verdicts are inconsistent. He concludes that the jury did not properly follow the law and the instructions of the court in convicting him of aggravated kidnapping. We disagree. The evidence reflects that the defendant terrorized the victim so as to commit aggravated kidnapping. We will not "upset a seemingly inconsistent verdict by speculating as to the jury's reasoning if we are satisfied that the evidence establishes guilt of the offense upon which the conviction was returned." Wiggins v. State, 498 S.W.2d 92, 94 (Tenn. 1973). Such is the case before us.

Based upon the foregoing and the record as a whole, we affirm the judgment of conviction.

_____
JOSEPH M. TIPTON, JUDGE